**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
OSWALD HEPBURN,

                                    Plaintiff,

          -against-

CITY OF NEW YORK; CAPTAIN DERBY ST.              <u>**MEMORANDUM AND ORDER**</u>
FORT, TAX ID # 937848; LIEUTENANT                21-CV-04158 (OEM) (VMS)
ALEXANDER BOBO, TAX ID # 947985;
SERGEANT CHRISTOPHER MUSA, TAX ID #
952040; P.O. LOUIS APONTE, TAX ID # 957850;
P.O. ALEKSANDR CHEKALIN, TAX ID # 966501;
P.O. LUIS FERNANDEZ, TAX ID # 953854; and
P.O. JOHN DOE 1-4,

                                    Defendants.
-----------------------------------------------------------------X
ORELIA E. MERCHANT, United States District Judge:

          Plaintiff Oswald Hepburn ("Plaintiff") filed this civil action on July 23, 2021, asserting

federal and state law claims arising from his arrest on May 2, 2020.  Plaintiff brings claims for

excessive force, false arrest and imprisonment, failure to intervene, municipal liability, intentional

infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"),

deliberate indifference, and violations of the Fourth Amendment via 42 U.S.C. § 1983, against

Defendants City of New York (the "City"), Captain Derby St. Fort ("St. Fort"), Lieutenant

Alexander Bobo ("Bobo"), Sergeant Christopher Musa ("Musa"), P.O. Louis Aponte ("Aponte"),

and P.O. Aleksandr Chekalin ("Chekalin"), (collectively "Defendants").  *See generally* Amended

Complaint ("Am. Compl."), ECF 40.  Defendants now move for partial summary judgment on all

claims, except for Plaintiff's excessive force claim against Defendant Bobo.  *See* Defendants'

Notice of Motion for Partial Summary Judgment, ECF 88.

          For the following reasons, Defendants' motion is granted in part and denied in part.

# BACKGROUND[1]

## A. Factual Background

Body camera footage from multiple officers captured much of the incident giving rise to this case.[2]

On May 2, 2020, at approximately 8:25 p.m., a crowd was gathered in the vicinity of Sutter Avenue and Tapscott Street in Brooklyn, New York.  Pl.'s 56.1 ¶ 1.  A number of uniformed and plain clothed police officers were assembled on the street and sidewalk.  *Id.*  At approximately the same time, Plaintiff stood in front of 129 Tapscott Street while his sister stood in the doorway of the building.  *Id.* ¶ 2.   In front of 129 Tapscott, a plain clothed officer approached a man in a yellow jacket, accused him of possessing an open container, and demanded he provide identification.  Deliso Decl. Ex. 2-e at 20:25:50-20:26:17.[3]  When the individual refused, the plain clothed officer grabbed him, a struggle ensued, and at least two officers tackled the individual to the ground and placed him under arrest.  *See id*; Deliso Decl. Ex. 2-a at 20:25:50-20:26:30.

---

[1] The facts set forth herein are drawn from Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1"), ECF 79-1; the Declaration of Brian Francolla in support thereof ("Francolla Decl."), ECF 79-2, and the exhibits attached thereto; the Supplemental Declaration of Brian Francolla ("Francolla Supp. Decl."), ECF 88-2, and the exhibits attached thereto; Plaintiff's Counter Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s56.1"), ECF 80-2; the Declaration of Joseph Deliso in support of Plaintiff's Opposition ("Deliso Decl."), ECF 80-1, and the exhibits attached thereto; the Supplemental Declaration of Joseph Deliso ("Deliso Supp. Decl."), ECF 89-1, and the exhibits attached thereto; Defendants' Reply Statement of Undisputed Facts ("Defs.' Reply 56.1"), ECF 83; and various witness depositions ("[Name] Dep."). Defendants' opening brief, ECF 88-1, is referred to as "Defs.' Mem.", Plaintiff's opposition to Defendants' motion, ECF 89, is referred to as "Pl.'s Opp.", and Defendants' reply, ECF 90, is referred to as "Defs.' Reply."  Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and are denied with only a conclusory statement by the other party, the Court finds such facts to be true.  E.D.N.Y. Local Rule 56.1 (c)-(d).

[2] Where the accuracy of video evidence is not disputed, the Court relies on such evidence to resolve questions of fact. *Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (considering motion for summary judgment, the court should view the facts in the light depicted by videotape when there "are no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened."); *accord Fabrikant v. French*, 691 F.3d 193, 201 n.6 (2d Cir. 2012) (affirming grant of summary judgment based upon probable cause and qualified immunity relying in part on video evidence where plaintiff did not dispute the accuracy of video).

[3] All video footage timestamps are referred to using the red timestamp in the upper left corner of the screen.

At some point during or after this arrest, Plaintiff's sister began verbally criticizing and recording the officers on her cell phone. Deliso Decl. Ex. 2-b, 20:26:10-20:28:00. Bobo, who was at that point standing in the street, walked swiftly from the street onto the sidewalk. *Id.*, at 20:29:55-20:30:00. Bobo approached the entry of 129 Tapscott Street and said nothing; he gave no verbal notice or directive to Plaintiff, Plaintiff's sister, or anyone else in the vicinity. *See id.*; Defs.' Reply 56.1 ¶ 42.

At this time, Plaintiff was leaning against the side of the stoop at 129 Tapscott while his sister stood at the top of the stoop in the building's doorway. *See id.*; Pl.'s 56.1 ¶ 2. As Bobo approached the stoop, Plaintiff straightened his body to a standing position. Francolla Decl. Ex. C at 20:29:56-20:29:58; Deliso Decl. Ex. 2-b at 20:29:56-20:29:58. Defendants assert, and Plaintiff disputes, that Plaintiff then stepped forward and "successfully placed himself in between Lt. Bobo and his sister." Pl.'s 56.1 ¶¶ 12-14.

What happened next is unclear. As Bobo passed by Plaintiff, the two made contact: in the video Bobo's right arm appears to make contact with Plaintiff's left arm or chest. Francolla Decl. Ex. C at 20:29:58; Deliso Decl. Ex. 2-b at 20:29:58. Bobo then moved up the steps and Plaintiff can be seen moving with him. Bobo's arm maintained contact with Plaintiff's body. *Id.* at 20:29:58-20:30:00. At this point, Plaintiff's feet cannot be seen within the frame of the video. The footage then becomes dark and shaky for several seconds. *Id.* at 20:30:00-20:30:04. At this point, Musa drew his taser, pointed it towards other individuals standing on the stoop, and then towards Plaintiff who was being handled by Bobo and another officer. Deliso Decl. Ex. 2-f at 20:30:01-20:30:06; Defs.' Reply 56.1 ¶ 47 (citing Musa Dep. 88:18-20). Musa stated "Louie, Louie, get off, back up back up back up" while pointing the taser at Plaintiff. Deliso Decl. Ex. 2-f at 20:30:04-20:30:06. The video then shows Plaintiff, now on the sidewalk, being handled by

Bobo and other officers as they take his body to the ground.  *Id.* at 20:30:07-20:30:10; Deliso Decl. Ex. 2-b at 20:30:08-20:30:10.

Plaintiff is heard saying "I'm an MTA worker.  I'm an essential worker."  Deliso Decl. Ex. 2-f at 20:30:07-20:30:09; Defs.' Reply 56.1 ¶ 45.  An officer responded with "I don't give a fuck who you are. . . . I don't give a fuck who you are motherfucker. . . . Don't ever put your fucking hands on one of us."  *Id.* at 20:30:10-20:30:27; Defs.' Reply 56.1 ¶ 46.  At this time, the video is again dark and shaky.  There are several "thud" sounds and what sounds like metal handcuffs clicking into place.  Deliso Decl. Ex. 2-f. at 20:30:11-20:30:25.

Plaintiff testified that while he was on the ground a male officer placed his knee on Plaintiff's neck, pushed his face into the concrete, then grabbed Plaintiff's face and head, and repeatedly slammed it onto the ground "like a coconut."  Defs.' Reply 56.1 ¶ 50; Hepburn Dep. at 47:22-48:5, 49:6-17.  Plaintiff further asserts that, an unidentified officer put his knee on Plaintiff's neck and put the weight of his body on Plaintiff's back for 10 or 15 seconds, and that Plaintiff felt kicks and punches.  Defs.' Reply 56.1 ¶¶ 51-52, 54; Hepburn Dep. at 48:22-49:17.  Defendants dispute Plaintiff's assertions.  Defs.' Reply 56.1 ¶¶ 51-53.

After being handcuffed, Plaintiff was placed inside a police car.  On the video he is heard saying "For defending another a person?  I have to go to fucking jail?  That's wrong man.  Why would you slam somebody on the ground? . . . What am I being taken for?  What crime?"  Deliso Decl. Ex. 2-c at 20:34:54-20:35:36.  He described his version of events to the officer driving:

> "What had happened was, I did not understand the fact that – the officer was going to do whatever he was going to do – he is supposed to make what he is doing present to everybody, right?  He's supposed to say 'listen, you guys, I am going to make an arrest for this situation. Stand aside.'  Whatever he may have to say, right? That officer came up. I had no idea he was an officer.  No idea who he was when he approached me.  Nothing! He just came up and in an aggressive way and tried to like put his hands [indecipherable] my facial area . . . I felt threatened and I defended myself.  Not even defended myself, but I

4

put my hands upwards and then I was into a situation that I wasn't able to control because at the end of the day I was overpowered by seven officers, you understand?"

*Id.* at 20:35:38-20:36:37. Plaintiff asserts that he was not resisting arrest. Defs.' Reply 56.1 ¶ 48.

Plaintiff's arrest report was filed by Defendant Chekalin, who did not witness the incident. Defs.' Reply 56.1 ¶ 68. The arrest report charged Plaintiff with resisting arrest, obstructing governmental administration, violent behavior, and unlawful possession of marijuana. Deliso Decl., Ex. 14 at 4. However, no marijuana was recovered from Plaintiff. Defs.' Reply 56.1 ¶ 69. Plaintiff asserts, and Defendants dispute, that this and "other misinformation was conveyed to the District Attorney's office by the defendant police officers." *Id.*

Defendants assert as justification for the arrest that "Bobo observed a woman standing in the doorway of 129 Tapscott Street drinking alcohol out of an open container" and "approached [her] for the purposes of issuing her a summons" and that Plaintiff intentionally physically interfered. Defs.' 56.1 at ¶¶ 7-13. Plaintiff disputes this and asserts that his sister had no container of any kind. Pl.'s 56.1 ¶¶ 6-7. Plaintiff asserts Bobo "charged toward the front of 129 Tapscott Street [and] he said 'she's going' to other officers in the street." Pl.'s 56.1 ¶¶ 8, 36. The body camera footage does not depict Plaintiff's sister holding an open container. *See* Deliso Decl. Ex. 2-b at 20:27:13-20:27:31. Plaintiff's sister was holding a cell phone in her right hand. *Id.* Her left hand appeared empty. *See* Deliso Decl. Ex. 2-b at 01:54. Bobo admits that he did not take out his summons book as he approached Plaintiff's sister. Pl 56.1 ¶ 8 (citing Bobo Dep. 73:4-12).

After his arrest, Plaintiff was transported to the 73rd Precinct at approximately 8:37 p.m. Pl.'s 56.1 ¶ 20. The police called an ambulance for Plaintiff at 10:23 p.m., approximately two hours after he was taken into custody. *Id.* ¶ 21. Plaintiff arrived at Brookdale Hospital at 11:38 p.m. *Id.* ¶ 23. Plaintiff testified that he reported to hospital staff that he "was beat up by the police and that [his] eye was burning and—and in pain, and [he] told them that [his] whole body was

5

hurting." Defs.' Reply 56.1 ¶ 55. Plaintiff left the hospital against medical advice because he feared contracting Covid-19 and passing it onto others. *Id.* ¶ 56.

Plaintiff was diagnosed with significant physical and psychological injuries. Plaintiff asserts, and Defendants dispute, that these were caused by the incident giving rise to this case. *Id.* ¶¶ 57-67.

### B. Procedural History

Plaintiff filed this complaint on July 23, 2021. Compl., ECF 1. The City filed an answer on October 29, 2021. City Def. Answer, ECF 25. The Individual Defendants filed an answer on March 21, 2022, and the case proceeded to discovery. Individual Defs.' Answer, ECF 31. Plaintiff filed an Amended Complaint on September 19, 2022, Am. Compl., ECF 40, and all Defendants answered. Am. Answer, ECF 42. Multiple extensions of time to complete discovery were granted.

The case was assigned to the undersigned on July 14, 2023, and discovery closed on July 23, 2024. On December 4, 2024, Defendants' fully briefed motion for partial summary judgment was filed, and on March 11, 2025, the Court held oral argument on Defendants' motion. During argument, it became clear that Plaintiff's counsel mistakenly omitted deposition testimony of Defendant St. Fort from the opposition exhibits. At the close of argument, the Court directed Plaintiff to file a supplemental letter and exhibits with respect to St. Fort, *see* ECF Minute Entry dated March 11, 2025; Transcript of Oral Argument, March 11, 2025 ("OA Tr."), which Plaintiff filed on March 13, 2025, Pl.'s Supp. Ltr., ECF 98. Defendants filed a supplemental response. Defs.' Supp. Reply, ECF 99.

## LEGAL STANDARD

A movant is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).

"The moving party bears the burden of showing that they are entitled to summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Therefore, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

"Where, as here, the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (citations omitted). If the moving party meets its burden of demonstrating the absence of a disputed issue of material fact, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial."

*Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014); *see* FED. R. CIV. P. 56(e).  The nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment.  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citation omitted).

## DISCUSSION

### A.  False Arrest and False Imprisonment

Plaintiff brings claims for false arrest and false imprisonment under 42 U.S.C. § 1983 and state law against Defendants St. Fort, Bobo, Musa, Aponte, Chekalin, Fernandez, and John Doe 1-4.  Am. Compl. ¶¶ 36-42, 86-95.

Section 1983 provides liability against state and local actors for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  Federal false arrest claims derive from the Fourth Amendment right to be free from unreasonable seizures, including the right to be free from arrest without probable cause.  *See Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  The elements of a false arrest claim under the Fourth Amendment are "substantially the same" as the elements for false arrest under New York law, *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021), and the elements for both are the same under § 1983, *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 173 n. 9 (S.D.N.Y. 2021).

A plaintiff claiming false arrest or false imprisonment under New York law must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Id.* at 169 (citations omitted).

**1. Probable Cause: Obstructing Governmental Administration**

Defendants assert that the undisputed facts establish that the officers had probable cause to arrest Plaintiff for obstructing governmental administration, as defined by New York Penal Law § 195.05. Defs.' Mem. at 6.

"[P]robable cause is an absolute defense to a false arrest claim." *Jaegly*, 439 F.3d at 152; *accord McCullough v. Graves*, 24-CV-506, 2024 WL 4615821, at *2 (2d Cir. Oct. 30, 2024) ("Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff."). If, as is the case here, the arrest "is not made pursuant to a judicial warrant, the defendant . . . bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852; *see also Jenkins v. City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007) ("summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable.").

Probable cause exists when a law enforcement officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (citations omitted). Further, "[t]o determine the existence of probable cause, a court considers the totality of the circumstances." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (citing *Jenkins*, 478 F.3d at 90). This examination is "based on a full sense of the evidence that led the officer to believe there was

probable cause to make an arrest." *Id.* (quoting *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013)).

> Section 195.05 of the New York Penal Law provides, in pertinent part:

> A person is guilty of obstructing governmental administration when [he] intentionally obstructs, impairs or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . .

The Second Circuit has held that an individual is guilty of obstructing government administration when: "(1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017) (citing N.Y. Penal Law § 195.05).

### a. Official Function

The official function being performed must be "'authorized by law.'" *Id.* (quoting *In re Verna C.*, 143 A.D.2d 94, 95 (2d Dep't 1988)). "Accordingly, a defendant may not be convicted of obstructing governmental administration or interfering with an officer in the performance of an official function unless it is established that the police were engaged in authorized conduct. A police officer's detention of an individual is not 'authorized' unless the officer possessed 'reasonable suspicion' that the individual was involved in criminal activity." *Charles v. City of New York*, 12-CV-6180 (SLT) (SMG), 2017 WL 530460, at *14 (E.D.N.Y. Feb 8, 2017) (cleaned up).

Defendants assert that, when Plaintiff intervened, Bobo was approaching Plaintiff's sister for the purpose of issuing her a summons for an open container. Defs.' Mem. at 6. Plaintiff responds, in essence, that Defendants' version of events is merely a post hoc rationale designed to bolster the idea that Bobo was engaged in authorized activity. Instead, Plaintiff asserts that Bobo

approached Plaintiff's sister for the purpose of unlawfully arresting her because she was vocally criticizing the officers. OA Tr. at 11:5-23; *see* Pl.'s Opp. at 12-13. In support of his theory, Plaintiff points out that the video shows no open container in Plaintiff's sister's possession and that Bobo testified that he did not have a summons book as he approached the stoop.[4] Pl.'s Opp at 13. Further, Plaintiff argues Bobo can be heard in the video saying "she's going," indicating that Bobo approached Plaintiff's sister for the purpose of an arrest. *Id.* at 12; Defs.' Reply 56.1 ¶ 36; Deliso Decl. Exhibit 2-b at 04:14-04:21. When asked what justifiable reason Bobo had to approach Plaintiff's sister, Musa testified "I mean, she did make terroristic threats towards officers so I guess that is a justifiable reason." Musa Dep. at 69:16-18. Musa then explains that he understood Bobo's statement "she's going" to mean "she was under arrest." Musa Dep. at 71:21-72:8; Pl.'s Opp at 12. St. Fort testified that he would generally understand those words to mean "that person is being arrested." St. Fort Dep. at 88:15-18; *see* Pl.'s Opp at 12.

In response to the Court's questioning at oral argument, counsel for Defendants argued that they do not have the burden "to demonstrate affirmatively that [Bobo's approach] was lawful." OA Tr. at 18:14-18. Defendants seem to attempt a similar argument in their reply brief, arguing that Plaintiff "has no standing to rely upon or assert § 1983 claims involving defendant Bobo and other non-parties present at the incident." Defs.' Reply at 3 (citing *Raffaele v. City of New York*, 242 F. Supp. 3d 152, 157-158 (E.D.N.Y. 2017).[5] However, the case law indicates otherwise.

---

[4] *See* Bobo Dep. 72:16-72:21 (Q. "Did You have your ticket book out? . . . A. I didn't have my ticket book out, no." and subsequently describing that Bobo intended to "get her" first before issuing a summons, that he anticipated Plaintiff's sister would flee and he intended to chase her); 78:3-78:6 ("Q. Do I have your testimony correct that from 2017 to today's date, you have never written a summons? A. Yes. That's true.").

[5] The cited case stands for the proposition that a plaintiff cannot bring a claim for failure to intercede by asserting officers should have interceded to prevent a violation of another individual's constitutional rights. That is not the issue here. Rather, the question of whether Bobo's actions were lawful speaks directly to whether Defendants had probable cause to arrest Plaintiff for obstructing governmental administration.

11

Because Defendants assert probable cause as a complete defense to a warrantless arrest, they bear the burden of establishing their reasonable belief that Plaintiff was committing a crime. Therefore, given Defendants' stated justification—obstruction of governmental administration—they must also demonstrate a lawful justification for Bobo's approach. For example, in *Charles v. City of New York*, plaintiff alleged she was falsely arrested for obstructing governmental administration. There, plaintiff observed officers stop and frisk a group of teenagers. 2017 WL 530460, at *7. Despite their repeated warnings that she step back, plaintiff questioned and approached the officers and was arrested. *Id.* The court found a genuine dispute of material fact as to whether the police had reasonable suspicion to stop and frisk the teenagers—and therefore whether the police were engaged in a lawful official action necessary to support probable cause for plaintiff's arrest. *Id.* at *15-16. Thus, the Court denied defendants' summary judgment motion. *Id.* Similarly, in *Georgia v. Davenport*, the Court concluded after a bench trial that there was a lack of probable cause to arrest plaintiff for obstructing governmental administration in part because "Defendant was not engaged in authorized official duties when he encountered Plaintiff." 21-CV-0484 (ML), 2024 WL 1074970, at *7 (N.D.N.Y. Mar. 12, 2024); *see also Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 157 (S.D.N.Y. 2006) (denying motion to dismiss false arrest claim where plaintiff plausibly alleged officers' initial stop was not supported by reasonable suspicion, noting "a conviction for obstructing governmental administration cannot stand unless it is established the police officers were engaged in lawful conduct.").

There is a genuine dispute of material fact over whether Bobo was engaged in a lawful official function. Specifically, what Bobo was doing when he approached Plaintiff's sister. Bobo's claim that he was in the process of issuing a summons for an open container is undermined by his own testimony: he was not carrying a summons book and had not issued a summons during his

entire tenure as a sergeant or lieutenant.  *See* Bobo Dep. 72:16-72:21; 77:19-78:6.  Furthermore, the claim that Plaintiff's sister was holding an open container is contradicted by the officers' body camera footage.  Finally, the testimony from both Musa and Bobo as to the purpose of Bobo's approach raise an undeniable question of Bobo's credibility, *see* Musa Dep. at 69:16-72:6, resolution of which must go to a jury.

### b.  Interference with Official Function

Second, even where an officer is engaged in an official function, "an individual must prevent or attempt to prevent a public official from performing a lawful official function by interfering with that function."  *Kass*, 864 F.3d at 209.  Such interference "must at least in part be 'physical,' . . . even if there is no physical force involved."  *Id.* at 209-10.  The element "is satisfied when an individual 'intrude[s] himself into, or get[s] in the way of, an ongoing police activity.'"  *Id.* at 210 (quoting *In re Kendell R.*, 71 A.D.3d 553 (1st Dep't 2010)).

Defendants assert the body camera footage conclusively shows Plaintiff "proceed[ed] to get in between defendant Bobo and [Plaintiff's] sister."  Defs.' Mem. at 6.  Defendants argue that Plaintiff and Bobo made contact "as a result of plaintiff shifting his position from leaning against the rail to standing upright towards defendant Bobo," and "plaintiff affirmatively mov[ing] closer to [Bobo.]"  *Id.* at 7.  Plaintiff asserts that he "made no physical movement [that] a police officer could have reasonably interpreted as obstruction" and did not move his body into Bobo's path.  Pl.'s Opp. at 9-10.  In Plaintiff's version of events, Bobo grabbed Plaintiff and pulled Plaintiff up the steps.  *Id.* at 10 (citing Hepburn Dep. at 65:23-66:20).  Defendants argue that this characterization is "belied by objective evidence" where Bobo's "right arm is extended in such a way that his right hand is pointed upwards—as if to ward someone off—rather than downwards— the only logical way he might have been able to carry plaintiff with said arm."  Defs.' Mem. at 7.

13

The Court finds that a genuine dispute of material fact remains as to whether Plaintiff stepped in front of Bobo and physically interfered. The body camera footage neither clearly contradicts the version of events told by Plaintiff, nor corroborates the version told by Defendants. Accordingly, the Court finds that a reasonable juror could credit Plaintiff's story in light of the video footage. *Cf. Scott*, 550 U.S. at 378-79 (video footage that clearly discredited plaintiff's story was dispositive at summary judgment).

### c.  Intent to Prevent Performance of Official Function

Third, "an individual who interferes with an official function must intend to prevent the officers from performing that function." *Kass*, 864 F.3d at 210. "[B]ecause 'the practical restraints on police in the field are greater with respect to ascertaining intent . . . the latitude accorded to officers considering the probable cause issue in the context of mens rea crimes must be correspondingly great.'" *Id.* (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013) (citation omitted)).

Defendants assert that, regardless of any justification or innocent motive, Plaintiff's actions were deliberate. Defs.' Mem. at 9. Plaintiff disputes this and argues that Defendants have not submitted any facts showing that his actions could fairly be perceived as intentional. Pl.'s Opp. at 9. Defendants argue in reply that, given the broad latitude afforded to officers in such contexts, they need only show that "it was reasonable to infer [intent] based upon plaintiff's actions." Defs.' Reply at 1 (citing *Kass*, 864 F.3d at 210, and *McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) (summary order) ("when an officer has evidence that a defendant has engaged in conduct proscribed by law . . . he has probable cause to arrest the person even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial.")).

Defendants rely on several cases for the proposition that Plaintiff's intent can be inferred: *Husbands ex rel. Forde v. City of New York*, 05-CV-9252 (NRB), 2007 WL 2454106 (S.D.N.Y. Aug. 16, 2007), aff'd, 335 F. App'x 124 (2d Cir. 2009); *Rasmussen v. City of New York*, 766 F. Supp. 2d 399 (E.D.N.Y. 2011); and *Antic v. City of New York*, 273 F. Supp. 3d 445 (S.D.N.Y. 2017). Defs.' Mem. at 8-9; Defs.' Reply at 1-2. In each of those cases, the district court found the requisite intent for probable or arguable probable cause in plaintiff's arrest for obstructing governmental administration.

This Court declines to extend those cases to the circumstances of this case because, unlike here, those plaintiffs had ample notice that an official function was underway and still chose to act. For example, in *Antic*, police officers ordered dispersal and then arrested someone for violating that order. 273 F. Supp. 3d at 449-51. Then, plaintiff exited his car and approached the officers. *Id*. The facts in *Rasmussen* and *Husbands* are similar: an arrest was clearly ongoing when plaintiffs chose to approach the officers—thus plaintiffs acted after having at least constructive notice of the official action. *See Husbands*, 2007 WL 2454106 at *13; *Rasmussen*, 766 F. Supp. 2d at 403-04. Other cases within this Circuit support the same conclusion: intent to interfere with an official action may be inferred where the plaintiff had notice that an official action was underway or that, given an officer's orders, one soon would be. *See, e.g.*, *Kass*, 864 F.3d at 210 (intent inferred where individual repeatedly refused to comply with officers' orders to move, thus giving rise to arguable probable cause for arrest); *Marcavage v. City of New York*, 689, F.3d 98, 110 (2d Cir. 2012) (probable cause existed to arrest protestors who were "hostile and noncompliant" with 17 directives to move); *Matter of Davan L.*, 91 N.Y.2d 88, 91-92 (1997) (probable cause existed to arrest individual who rode bicycle into "confined and defined" police activity area, despite being "put on specific, direct notice" not to do so).

15

Here, it is unclear whether there was constructive or actual notice that an official act was underway. As Bobo approached Plaintiff and Plaintiff's sister, Bobo said nothing.[6] *See* Francolla Decl. Ex. C at 20:29:54-20:30:00. A mere three seconds elapse from the time when Bobo steps onto the sidewalk in front of the stoop to the moment he makes contact with Plaintiff. The parties' dispute as to whether notice and the short time in which the events unfolded give rise to a genuine dispute of material fact. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that no reasonable officer could infer that plaintiff intentionally acted to interfere with an official action.

Thus, based on the totality of the circumstances, the Court finds that disputes of material fact as to the elements of the crime precludes the Court from finding that probable cause existed.

**2. Personal Involvement of Individual Defendants**

Defendants submit that, should this Court find a dispute of fact regarding probable cause for Plaintiff's arrest, Plaintiff's false arrest claims should proceed only against Bobo because there is no evidence to support liability against any other individual defendant. Defs.' Reply at 5. Defendants have thus conceded Bobo's personal involvement in Plaintiff's arrest.

An award of damages under § 1983 against a defendant requires that he or she be personally involved in the alleged constitutional violation. *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). Personal involvement requires "direct participation," meaning the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Id.* at 155. In the false arrest context, "It is well settled that an officer need not

---

[6] Defendants claim that the video's sound is "inaudible" at the time of the approach. Defs.' Reply 56.1 ¶ 39. However, this is belied by the body camera footage: the audio is clear and does not cut out. *See* Francolla Decl. Ex. C at 20:29:54-20:30:00.

necessarily have directly seized and handcuffed an individual to be liable for false arrest." *Moroughan v. Cnty of Suffolk*, 514 F. Supp. 3d 479, 517 (E.D.N.Y. 2021) (citations omitted). "Instead, an officer may be held liable for false arrest where he caused the arrest, or was involved in the decision to arrest the plaintiff." *Id.* (citations omitted).

### a. Musa

There is evidence in the record to support Plaintiff's position that Musa was personally involved in Plaintiff's arrest. For example, the parties do not dispute that Musa drew his taser and pointed it toward Plaintiff during the arrest. Defs.' Reply 56.1 ¶ 47. Further, Musa confirmed that the CCRB summary report, which states that he was one of the officers who took Plaintiff to the ground, Deliso Decl. Ex. 21, ECF 89-7, was generally accurate, Musa Dep. at 24:1-28:16. Finally, Musa testified that he attempted to place handcuffs on Plaintiff while he was on the ground. Musa Dep. at 80:20-81:10. Thus, there is a genuine dispute of fact regarding whether Musa was personally and physically involved in Plaintiff's arrest.

### b. Aponte

There is also evidence to support the personal involvement of Aponte. Aponte testified that as Bobo approached the stoop of 129 Tapscott Street, he followed Bobo to "help him and assist him in whatever he was doing that day." Aponte Dep. at 93:12-94:9, 125. Indeed, the body camera footage shows an officer following directly behind Bobo as he ascends the steps, *see* Francolla Decl. Ex. C at 20:29:57-20:29:59; Deliso Decl. Ex. 2-f at 20:29:57-20:30:30, who Plaintiff identifies as Aponte. Defs.' Reply 56.1 ¶ 47. That officer is then seen, together with Bobo, grabbing Plaintiff. Pl.'s Ex. 2-f at 20:30:03-20:30:05. In his deposition, Aponte admitted that he was one of the officers who surrounded Plaintiff. Aponte Dep. at 124:12-125:6. Accordingly, Plaintiff has raised a genuine dispute of fact as to Aponte's personal involvement in the arrest.

17

### c.   St. Fort

Defendants assert that it "is unclear what evidentiary basis plaintiff has to pursue [his false arrest] claim against defendant[] St. Fort." Defs.' Mem. at 9. Plaintiff asserts in opposition that Defendants have not met their initial burden on summary judgment and thus have not effectively shifted the burden to Plaintiff. Pl.'s Opp. at 14; *see* OA Tr. 55:3-56:24. In his brief, Plaintiff submits in a heading that St. Fort was "present and acted in concert" to violate Plaintiff's constitutional rights. Pl.'s Opp. at 14. However, at oral argument, Plaintiff specifically asserted that St. Fort is liable for false arrest for either failing to intervene or for ordering officers to put Plaintiff in the car—effectively instructing the arrest. OA Tr. at 46:5-22; 47:12-17. Counsel for Defendants argued that this is not sufficient evidence to go to a jury and that, to the extent St. Fort issued such orders, those orders would not constitute participation in the arrest because the arrest had already occurred once Plaintiff was placed in handcuffs. OA Tr. at 46:24-47:11.

Indeed, an individual can be heard on the body camera footage saying "pick him up" and "get him in the car" repeatedly. Pl.'s Ex. 2-f at 20:30:35-20:30:59. Plaintiff attributes these statements to St. Fort, Pl.'s Supp. Ltr. ¶ 2, but, as Defendants point out, Plaintiff does not "establish that it was Captain St. Fort who actually said those words," Defs.' Supp. Reply at 1. Notably, Defendants have made no affirmative statement or submission of evidence that it was *not* St. Fort. In his deposition, St. Fort denied any recollection of making this statement, St. Fort Dep. at 86:1-7, but admitted to being present in the area, *id.* at 50:9-17. The CCRB case summary notes that St. Fort was among the officers outside 129 Tapscott Street at the time of the incident. Pl.'s Ex. 27, ECF 98-2. Aponte, Bobo, and Musa also identified St. Fort as being present at the scene. Bobo Dep. at 111:10-21; Musa Dep at 40:17-24, 71:2-11; Aponte Dep. at 15:21-25. St. Fort was the

highest-ranking officer on the scene, responsible for supervising the other officers.  St. Fort Dep. at 17:10-18:3.

The Court finds that Plaintiff has raised a genuine dispute of fact regarding whether St. Fort ordered or otherwise assisted in Plaintiff's arrest.  A reasonable jury could conclude that St. Fort ordered officers to "get him in the car," which may constitute ordering, directing, or assisting in the arrest.  *See Taylor v. City of New York*, 19-CV-6754 (KPF), 2022 WL 744037, at *12 (S.D.N.Y. Mar. 11, 2022) ("There is a triable issue of fact as to whether [officer] arrived at the scene of the arrest and affirmatively approved Plaintiff's arrest. If proven true, courts have found such conduct to constitute direct involvement in an arrest.").  Plaintiff is entitled to further develop St. Fort's testimony at trial so that a jury may determine any questions of credibility or memory in St. Fort's repeated failure to recall his involvement in the arrest.

### d.   Chekalin

Defendant Chekalin is entitled to summary judgment for his lack of personal involvement in Plaintiff's arrest.  It is undisputed that Chekalin was not present at the scene of the arrest.  Defs.' Reply 56.1 ¶ 68. However, Plaintiff asserts that a dispute of fact exists as to Chekalin's personal involvement because he authored the arrest report, which contained incorrect information.  Pl.'s Opp. at 5; OA Tr.  at 35:14-25.  But an officer's completion "of arrest paperwork, in isolation, is likely to be insufficient to create a genuine dispute of material fact as to that officer's personal involvement in an arrest."  *Taylor*, 2022 WL 744037, at *12 (Comparing *Drayton* v. *City of New York*, 17-CV-7091 (RRM) (RLM), 2020 WL 2615930, at *5 (E.D.N.Y. May 20, 2020) (granting summary judgment to officer on false arrest claim where the only evidence of personal involvement was his signature on arrest documentation), and *Rodriguez* v. *City of New York*, 08-CV-4173 (RRM) (RLM), 2012 WL 1059415, at *9 (E.D.N.Y. Mar. 28, 2012) (same), with *Vett v.*

19

*City of New York*, 20-CV-2945 (CM), 2022 WL 47231, at *10 (S.D.N.Y. Jan. 5, 2022) (allegation

that supervising officer approved arrest in advance, despite not being present at the scene, was

sufficient to survive motion to dismiss, albeit on qualified immunity grounds), and *Harris* v. *City

of New York*, 15-CV-8456 (CM), 2017 WL 6501912, at *4 (S.D.N.Y. Dec. 15, 2017) (finding an

officer who "verified" an arrest—that is, concluded that the officers had probable cause to

effectuate an arrest—to be a direct participant in an arrest)).

Moreover, as to Plaintiff's assertions that the report contained incorrect information,

Chekalin testified to relying on officers at the scene for the information contained in the report.

*See* Defs.' Reply 56.1 ¶ 70.  Thus, Chekalin is entitled to summary judgment under the "fellow

officer" rule, which "shields arresting officers" who rely on "the word of their colleagues . . . when

the basis of probable cause is later found to be false or mistaken."  *Golphin v. City of New York*,

09-CV-1015 (BSJ), 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011); *see also United States* v.

*Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("[A]n arresting officer might not be aware of all the

underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act

reasonably in relying on information received by other law enforcement officials.").

### e.   Fernandez

Likewise, Plaintiff admits that Fernandez did not witness the arrest.  Defs.' Reply 56.1 ¶

70.  Because there is no other evidence in the record to support his personal involvement,

Fernandez is entitled to summary judgment on Plaintiff's false arrest claim.

### f.   John Doe 1-4

Plaintiff's claims against any remaining unnamed John Does are dismissed without

prejudice.  "Where a plaintiff has had ample time to identify a John Doe defendant but gives no

indication that he has made any effort to discover the [defendant's] name, . . . the plaintiff simply

cannot continue to maintain a suit against the John Doe defendant." *Coward v. Town & Vill. Of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (citations omitted).

### 3. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because Plaintiff's right to be free from arrest in the specific circumstances of this case was not "beyond debate." Defs.' Mem. at 17. Defendants rely on their argument that there is "ample evidence" to support a finding of arguable probable cause. *Id*. Plaintiff asserts that the evidence is insufficient, and that Defendants have not shown that his arrest "was based on an objectively reasonable belief" that probable cause existed. Pl.'s Opp. at 20-21.

Qualified immunity is an affirmative defense on which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). The doctrine shields officers from personal liability "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (citations omitted). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" and must be stated with "a high degree of specificity." *Id.* at 63. "In the context of a warrantless arrest, the rule must obviously resolve whether the circumstances with which the particular officer was confronted constituted probable cause." *Id.* at 64 (cleaned up).

In assessing whether a right is clearly established, district courts must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam); *see Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) (courts "consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of

21

a reasonable officer in light of preexisting law."). In *Dancy v. McGinley*, the Second Circuit upheld a jury verdict against a police officer for false arrest of an individual for obstructing governmental administration. 843 F.3d 93, 112-113 (2d Cir. 2016). In that case, the Circuit reasoned that the officer was not entitled to qualified immunity because "no reasonable officer" would have believed that probable cause existed, in part because the initial stop of the arrestee was unauthorized. *Id.* at 112. In this case, if the facts are construed in the light most favorable to Plaintiff, the Court concludes that *Dancy* is sufficient to show that Plaintiff's constitutional right was clearly established, such that no reasonable officer could find his arrest to be lawful.

In the specific context of a false arrest claim, an officer is entitled to qualified immunity if arguable probable cause exists, that is if: "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Amore v. Novarro*, 624 F.3d 522, 531-32 (2d Cir. 2010) (citations omitted). Whether an official's belief that his acts did not violate a plaintiff's clearly delineated rights is objectively reasonable depends "on the particular facts of the case." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (quoting *Hurlman v. Rice,* 927 F.2d 74, 78-79 (2d Cir. 1991)). Thus, if there is a dispute as to facts material to the arguable probable cause analysis, "the factual [dispute] must be resolved by the fact-finder." *Kerman*, 374 F.3d at 109; *see Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (a court should grant summary judgment on qualified immunity grounds "only . . . when a court finds that an official has met his or her burden demonstrating that no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right

was clearly established at the time of the challenged conduct.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).[7]

Therefore, because there are disputed issues of fact concerning the arguable probable cause determination, the defense of qualified immunity must also be submitted to the jury. *See, e.g.*, *Jenkins*, 478 F.3d at 87-88 (police officers not entitled to qualified immunity on a false arrest claim at summary judgment where parties disputed the essential facts underlying probable cause, because "'arguable' probable cause should not be misunderstood to mean 'almost' probable cause.").

Accordingly, Defendants' motion for summary judgment on Plaintiff's false arrest and false imprisonment claims is granted with respect to Defendants Chekalin, Fernandez, and John Doe 1-4 and is denied with respect to Defendants Bobo, Musa, Aponte, and St. Fort.

## B. Excessive Force

Plaintiff brings claims for excessive force against Defendants Bobo, Musa, Aponte, Chekalin, and John Doe 1-4 under federal and state law. Am. Compl. ¶¶ 30-35, 81-85. Defendants seek to dismiss Plaintiff's excessive force claims against all Defendants except Bobo. Defs Mem. at 10.

A police officer's use of force is "excessive" in violation of the Fourth Amendment if it is "objectively unreasonable in light of the facts and circumstances confronting them." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (citations omitted). "[E]xcept for § 1983's

---

[7] Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court after it receives the jury's determination of the facts. *Coollick*, 699 F.3d at 219; *see, e.g.*, *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (after the district court receives "the jury['s] ... deci[sion as to] what the facts were that the officer faced or perceived," the court then may "make the ultimate legal determination of whether qualified immunity attaches on those facts" (internal quotation marks omitted)); *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (the ultimate question of entitlement to qualified immunity is one of law for the court to decide "[o]nce disputed factual issues are resolved") (citations omitted); *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues . . . . The ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully" should be made by the court "on the facts found" by the jury.); *accord id.* at 76, 77 (Winter, J., dissenting) (Although "the ultimate decision regarding the qualified immunity defense is for the court," "the court [that is] ruling on the qualified immunity issue must know what the facts were that the officer faced or perceived, and the finding of those facts appears to be a matter for the jury.").

requirement that the tort [of excessive force] be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical." *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)).  Whether the force applied was reasonable depends on "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

### 1.  Personal Involvement

As with a false arrest claim, Plaintiff must establish that the individual defendants were personally involved in the alleged constitutional deprivation to obtain an award of Section 1983 damages.  *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

Defendants first argue that Plaintiff has adduced "no evidence" during discovery to survive summary judgment on excessive force against anyone other than Defendant Bobo.  Defs.' Mem. at 10.  Plaintiff responds that Defendants have fundamentally misunderstood the burden on summary judgment and have failed to establish that no genuine dispute of fact exists as to whether individual officers were present and have failed to establish that the officers did not use excessive force as a matter of law.  Pl.'s Opp. at 14-15.

Defendants have not "document[ed their] assertion of no personal involvement by specifying in a summary judgment motion the extent of [the officers'] involvement and denying involvement as alleged."  *Ricks v. O'Hanlon*, 07-CV-9849 (WHP), 2010 WL 245550, at *4 (S.D.N.Y. Jan. 19, 2010) (citations omitted).  "[U]nless the moving defendant cites portions of the record that show its entitlement to judgment, an assertion by the defendant that the plaintiff 'has

not produced any evidence,' without more, does not show that the plaintiff has insufficient evidence. Such a statement fails to show either that there is no genuine dispute as to any material fact or that the defendant is entitled to judgment as a matter of law." *Nick's Garage*, 875 F.3d at 115-16 (citations omitted).

Defendants' contention that there is simply "no evidence" in the record to support Plaintiff's excessive force claims by anyone other than Bobo is belied by Defendants' own evidentiary submission: Plaintiff's deposition testimony. *See* Hepburn Dep., ECF 79-4, at 67:16-72:22. A plaintiff's testimony alone, without any other corroborating evidence, is enough to survive summary judgment where such testimony is not "'contradictory and incomplete'" or "'so replete with inconsistencies and improbabilities that no reasonable juror' could credit it." *Adamson v. Miller*, 808 Fed. App'x 14, 16 (2d Cir. 2020) (quoting *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019)).

By the same token, Defendants' argument that Plaintiff's claims are based on "mere speculation" and that "nowhere on any of the video footage" can "specific defendants . . . be seen punching, kicking, kneeing or tasing plaintiff," is unsuccessful. *See* Defs.' Mem. at 11; *see* Defs.' Reply at 6 (arguing Plaintiff has not met his burden because he did not specifically name Defendants who used excessive force). In support of this argument, Defendants cite to cases dismissing a plaintiff's claims for failure to identify particular officers *after trial* on motions for judgment as a matter of law. Defendants first cite *Rodriguez v. City of New York*, 10-CV-9570 (PKC) (KNF), 2012 WL 1658303 (S.D.N.Y. May 11, 2012), for the proposition that "it is not enough for a plaintiff to establish that an officer was present for the alleged assault." Defs.' Mem. at 10-11. Similarly, Defendants point to *Corley v. Shahid*, 89 F. Supp. 3d 518, 525 (E.D.N.Y. 2015), for the proposition that a plaintiff's failure to distinguish between officers who failed to

25

intervene constituted speculation and warranted dismissal. Defs.' Mem. at 10. These cases are plainly not applicable here, where the relevant question is whether there is a genuine dispute of fact—not whether Plaintiff has established liability. At this stage, on summary judgment, "A plaintiff need not establish who, among a group of officers, directly participated in [an] attack and who failed to intervene." [8] *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003); *see Fischl v. Armitage*, 128 F.3d 50, 57 (2d Cir. 2017) (evidence that defendant's presence in the vicinity of the attack on plaintiff was sufficient to survive summary judgment). This is particularly true where a plaintiff is in no position to specifically identify those involved. *See Shankle v. Andreone*, 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009) (noting importance of allowing alternative theories "where the acts complained of by the plaintiff, if true, . . . are likely to have prevented plaintiff from identifying which of three defendant officers specifically engaged in the bad acts."). Here, Plaintiff was allegedly lying face down on the concrete while the alleged attack took place.[9]

To the extent Plaintiff has "voluntarily undertook to make the showing" of individual Defendants' personal involvement in an excessive use of force, the Court has reviewed the evidence in the record and addresses each Defendant in turn. *See Nick's Garage*, 875 F. 3d at 115.

Plaintiff brings claims for excessive force against Defendants Bobo, Musa, Aponte, Chekalin, and John Doe 1-4 under § 1983 and state law. Am. Compl. ¶¶ 30-35, 81-85.

---

[8] *See, e.g.*, *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 298 (S.D.N.Y. 2009) (plaintiff's inability to identify which officer threw her to the floor and held her there with his boot, together with undisputed presence of officers was sufficient "to present a genuine issue of material fact as to whether each of the individual officers was personally involved in using or permitting the use of the alleged excessive force"); *Campbell v. City of New York*, 06–CV–5743, 2010 WL 2720589, at *9 (S.D.N.Y. June 30, 2010) (plaintiff's testimony that defendant-detective was with the officer who transported plaintiff to the place where plaintiff was interrogated and assaulted was sufficient to survive summary judgment on excessive force or failure to intervene claim); *Centeno v. City of New York*, 16-CV-2393 (VSB), 2019 WL 1382093, at *5 (S.D.N.Y. Mar. 27, 2019) (presence may be sufficient circumstantial evidence from which a reasonable jury may conclude who, if anyone, used excessive force).

[9] *See* Hepburn Dep. at 46:12-48:5 (describing officer with "his knee on my neck with my face down to the ground.").

First, Musa admitted to being present at the arrest, drawing his taser, and attempting to place handcuffs on Plaintiff.  *See* section A(ii)(b), *supra*.  Further, Plaintiff testified that the person who cuffed him pulled his arms in two different directions with such force "like [he] was on a cross."  Hepburn Dep. at 42:14-25, 67:3-11.  He also described two white officers[10] as the individuals who he believed were kicking and punching him while he was on the ground and that one of those officers placed a knee on his neck and banged his head into the concrete.  *Id.* at 46-47.  As discussed above, Aponte identified himself as the officer who followed Bobo during the incident, who can be seen on the video footage with his hands on Plaintiff.  *See* section A(ii)(c), *supra*.  Accordingly, there remains a genuine dispute of fact as to both Musa's and Aponte's use of force.

In the Amended Complaint, Plaintiff brings claims for excessive use of force against Chekalin.  But, as stated above, the parties do not dispute that Chekalin did not witness the incident and was not at the scene.  Defs.' Reply 56.1 ¶ 68.  Chekalin is therefore entitled to summary judgment as a matter of law on Plaintiff's excessive force claims.

For the same reasons stated above, *see* section A(ii)(g), *supra*, Plaintiff's claims against any remaining unnamed John Does are dismissed.

## 2.  Qualified Immunity

Defendants argue they are entitled to qualified immunity on Plaintiff's excessive force claim because there is "no evidence in the record" that excessive force was used.  Defs.' Mem. at 18.  Plaintiff responds that, because issues of fact remain, the Court cannot yet determine whether qualified immunity applies.  Pl. Opp. at 21.

---

[10] The individual identified as Defendant Bobo in the body camera footage is Black.  The record identifies Defendant Musa as White and Defendant Aponte as Hispanic.  *See* Deliso Decl. Ex. 16.

As an initial matter, at the time of the arrest it was clearly established that an officer who brings an arrestee to the ground and punches him, "where the arrestee is suspected of a relatively minor offence, [and] is not physically resisting, making threatening gestures, or attempting to flee[,]" violates the law. *Cox v. Fischer*, 247 F. Supp. 3d 471, 482 (S.D.N.Y. 2017); *see Brown v. City of New York*, 798 F.3d 94, 109-10 (2d Cir. 2015) (Jacobs, J., concurring in part) (officers violated clearly established law by pushing woman and pepper spraying her, where she was suspected of disorderly conduct, not "actively resisting arrest," neither "fleeing, nor physically attacking an officer, nor even making a move that an officer could reasonably interpret as threatening an attack."); *see also O'Hara v. City of New York*, 570 Fed. App'x 21, 23 (2d Cir. 2014) (officer violated clearly established law when he "punched [an arrestee] in the face *without* provocation and then proceeded to punch him repeatedly" once he fell to the ground, where the officer was one of six officers on the scene and the arrestee was "unarmed," "non-menacing," and suspected of a "relatively minor" offense). Therefore, because there is a genuine dispute of material fact about whether Defendants Musa and Aponte kicked, punched, or knelt on Plaintiff, *see* section A(3), *supra*, the qualified immunity defense to excessive use of force will proceed before a jury. *See Coollick*, 699 F.3d at 219.

Accordingly, Defendants' motion for summary judgment on Plaintiff's excessive force claim is granted with respect to Defendants Chekalin and John Doe and denied with respect to Defendants Musa and Aponte.

## C. Failure to Intervene

Plaintiff also brings a failure to intervene claim asserting that Defendants St. Fort, Bobo, Musa, Aponte, Chekalin, and John Doe 1-4 each had a reasonable opportunity to intervene to prevent the false arrest and unlawful use of force but chose not to. Am. Compl. ¶¶ 43-52.

28

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Bremen,* 17 F.3d 552, 557 (2d Cir. 1994). Liability may attach where an officer fails to intervene but observes or has reason to know: "(1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Id.* (cleaned up); *see Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013) (explaining that an officer is personally involved and may be held liable if the "(1) officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.").

### 1. Opportunity to Intervene

Defendants argue they are entitled to summary judgment on Plaintiff's failure to intervene claim because Defendants had no opportunity to intervene.

Defendants contend that because the incident giving rise to Plaintiff's claims lasted "approximately twenty seconds," "it would have been impossible for any of the defendants to prevent" excessive force from happening. Defs.' Mem. at 11-12. Defendants argue courts in this district have dismissed such claims under far more difficult circumstances and that, therefore, Plaintiff's claim must be dismissed as a matter of law. *Id.* Plaintiff argues this is a fact-based inquiry that is best left to the jury. Pl.'s Opp. at 17.

Defendants posit that "mere presence at the scene of an incident is insufficient to establish that an officer had an opportunity to prevent the use of excessive force." Defs.' Mem. at 14. However, for the same reasons discussed above, *see* section B(1), *supra*, presence in the vicinity of a constitutional violation, when coupled with a question of fact over time to intervene is

29

sufficient for Plaintiff's claims to survive summary judgment. *See Fischl*, 128 F.3d at 57 (evidence that defendant's presence in the vicinity of the attack on plaintiff was sufficient to survive summary judgment); *see also Jeffreys*, 275 F. Supp. 2d at 474.

For Plaintiff to proceed on the theory that Defendants failed to intervene, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Branen*, 17 F.3d at 557. Whether the officer had a "realistic opportunity" to intervene is normally a question for the jury, unless "considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Terebesi*, 764 F.3d at 244 (quoting *Branen*, 17 F.3d at 557).

That the incident did not last more than twenty seconds in total is not sufficient to find as a matter of law that it was impossible to intervene. *Cf. Leghal v. United States*, 13-CV-3923, 2015 WL 9592706, at *8 (S.D.N.Y. Dec. 29, 2015) ("Courts may look to the length of the incident, *inter alia*, to determine whether an officer had a realistic opportunity to intervene."). This is especially true where, as here, Plaintiff makes multiple allegations of excessive force: the first being that Bobo dragged him up the stairs and the last being that Plaintiff was kicked and punched while he was face-down on the concrete. This case is not one in which there was a single incident or "rapid succession" of blows. *See Raffaele*, 242 F. Supp. 3d at 158 (interaction consisting of a single push and hit within two seconds of each other "could not have been anticipated"). Indeed, in the intervening time between the alleged drag and punches multiple officers did intervene to "help" Bobo. Plaintiff alleges that those officers, specifically Musa and Aponte, acted not to stop an excessive use of force, but to exert more. Thus, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that before the subsequent punches and kicks officers would be "alerted to the need to protect [Plaintiff] from further abuse." *O'Neill v. Krzeminski*, 839 F.2d 9, 12 (2d Cir. 1988) (finding that after initial blows occurred, issue of fact existed as to

whether the officer, "[h]aving seen the victim beaten," had an opportunity to intervene to prevent further harm); *cf. Corley*, 89 F. Supp. 3d at 525 (granting summary judgment to defendants where the "sudden" assault "happened and finished so fast, and with no warning whatsoever").

While "individual law enforcement officers may not be held liable for failure to intervene where they are liable under a direct theory of participation, plaintiffs are permitted to plead in the alternative." *Rizk v. City of N.Y.*, 462 F. Supp. 3d 203, 226 (E.D.N.Y. 2020) (cleaned up). Therefore, although St. Fort, Musa, and Aponte are alleged to have directly participated in the conduct underlying Plaintiff's claims, Plaintiff is permitted to plead his failure to intervene claim in the alternative. However, because the parties do not dispute that Bobo was a direct participant in the allegedly unlawful conduct, the Court dismisses the failure to intervene claim against Bobo as duplicative. *See Sanabria v. Detective Shawn Tezlof*, 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016).

Chekalin and Fernandez did not witness the incident and are thus entitled to summary judgment on Plaintiff's failure to intervene claim.[11] Any remaining claims against unnamed John Does are likewise dismissed. *See Coward*, 665 F. Supp. 2d at 300-01.

Accordingly, because officers St. Fort, Aponte, and Musa were present and witnessed the incident, there remain genuine issues of fact with respect to their opportunity to intervene in the excessive use of force. *See Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016) ("failure-to-intervene claims—even assuming that the assault lasted less than twenty seconds—were for the jury to decide. . . . [W]e cannot hold that the assault occurred so quickly that the defendant officers

---

[11] Plaintiff argues in opposition that Fernandez was at the scene. Pl.'s Opp. at 17. In support, Plaintiff cites deposition testimony of Chekalin in which he states he cannot remember whether Fernandez told him about the incident, Chekalin Dep. at 58:5-19, but Chekalin never states that Fernandez was at the scene or told him about the incident, *see generally id.* Moreover, Plaintiff asserts in his 56.1 Statement that Fernandez did not witness the incident. Defs.' Reply 56.1 ¶ 70.

lacked time to intercede as a matter of law."). For substantially the same reasons, the Court finds there also exists a genuine issue of fact with respect to the opportunity to intervene in Plaintiff's false arrest.

### 2. Qualified Immunity

In the context of qualified immunity, "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (citations omitted). Qualified immunity applies where "the failure to intercede [is] under circumstances making it objectively unreasonable for [the officer] to believe that his fellow officers' conduct did not violate [a suspect's constitutional] rights." *Id.*

Defendants argue that the officers are entitled to qualified immunity because "reasonable officers could certainly disagree about whether and to what extent they should have intervened."[12] Defs.' Mem. at 18-19. However, this does not entitle them to summary judgment as a matter of law. "On summary judgment, a defendant must show that *no* reasonable trier of fact could find that the defendants' actions were objectively unreasonable." *Ismael v. Charles*, 18-CV-3597 (GHW), 2020 WL 4003291, at *13 (S.D.N.Y. July 15, 2020) (citations omitted). There is a question of fact about whether the officers acted in an objectively unreasonable manner when, as Plaintiff alleged, he was forced to the ground and suffered repeated blows. As discussed, it was clearly established that excessive use of force and an arrest without probable cause, under the allegations at issue here, is unreasonable. Accordingly, factual disputes preclude the Court from

---

[12] Plaintiff does not respond directly to Defendants' argument regarding failure to intervene. *See generally*, Pl.'s Opp.

granting summary judgment on Plaintiff's failure to intervene claim against St. Fort, Aponte, and Musa.

### D. Deliberate Indifference

Plaintiff brings claims under federal and state law for Defendants' alleged deliberate indifference to Plaintiff's "serious" medical needs following the arrest. Am. Compl. ¶¶ 77-80, 111-15.

To succeed on a deliberate indifference claim, a pretrial detainee must prove (1) that the deprivation of medical care was "sufficiently serious,"[13] and (2) "that the defendant acted intentionally to impose the alleged condition," or that the defendant "failed to act with reasonable care to mitigate the risk that the condition posed, . . . [when] the official *knew or should have known*, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. To meet the second prong, a Plaintiff must show both that they did not receive adequate medical care and that the inadequacy was sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023). Thus, when a detainee claims a delay in medical treatment, the court must examine whether the delay itself created a risk of harm. *Id.* at 280.

Defendants argue Plaintiff's deliberate indifference claims must be dismissed as a matter of law because there is no evidence to support Plaintiff was suffering from a "serious medical condition on May 2, 2020." Defs.' Mem. at 15. Plaintiff admitted that he did not request medical treatment after his arrest, Hepburn Dep. at 95:17-19, and Defendants argue that his injuries were

---

[13] "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). "Relevant factors include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (citations omitted).

superficial in nature and thus, as a matter of law, cannot support a deliberate indifference claim. Defs.' Mem. at 14.  In opposition, Plaintiff argues that his "open wound . . . which suggests head trauma" demonstrated a serious medical need.  Pl.'s Opp. at 18.

The parties do not dispute that Plaintiff arrived at the precinct at approximately 8:37 p.m., an ambulance was called at 10:23 p.m., and Plaintiff arrived at Brookdale Hospital at 11:38 p.m. Pl.'s 56.1 ¶¶ 20-21, 23.  Therefore, because Plaintiff eventually received medical care, to maintain his deliberate indifference claim he must establish that the delay in medical care created a risk of harm.  Plaintiff has not attempted to do so.  *See generally*, Pl.'s Opp.

Moreover, as Defendants correctly point out, "Courts in this Circuit have consistently held that cuts, lacerations, bruises, and other superficial injuries . . . are not sufficiently serious to support a deliberate indifference claim."  *Goodwin v. Kennedy*, 13-CV-1774 (SJF) (AKT), 2015 WL 1040663, at *12 (E.D.N.Y. Mar. 10, 2015) (quotation and citation omitted) (collecting cases). This is true even when, as here, those injuries are to a plaintiff's head.  *See, e.g.*, *Dallio v. Hebert*, 678 F. Supp. 2d 35, 60 (N.D.N.Y. 2009) (holding that two black eyes, bruising in the kidney area, kick marks, open lacerations, headache and numbness did not constitute serious medical need as a matter of law); *Brown v. Annucci*, 19-CV-9048 (VB), 2021 WL 860189, at *5 (S.D.N.Y. Mar. 8, 2021) (laceration to eye, facial swelling, and bleeding from nostril and lip were not sufficiently serious).[14]

Further, the fact that Plaintiff admitted to never requesting medical attention while in custody, Hepburn Dep. at 95:17-23, undermines the notion that, regardless of the seriousness of the injuries, Defendants knew or should have known the need for medical care was urgent or posed

---

[14] The Court notes that head injuries "do not per se constitute a serious medical condition," *Snoussi v. Bivona*, 05-CV-3133 (RJD) (LB), 2010 WL 3924255, at *6 (E.D.N.Y. Feb. 17, 2010), but there may be circumstances in which such injuries may pass muster.  *See Benitez v. Ham*, 04-CV-1159, 2009 WL 3486379, at *30 (N.D.N.Y. 2009) (finding bleeding inner ear, head pain, and liver pain to be serious medical conditions).  That is not the case here.

an excessive risk of harm.  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (there must be "a condition of urgency, one that may produce death, degeneration or extreme pain").

Plaintiff also argues in opposition to Defendants' motion that his "wound, close contact with others, and lack of medical treatment increased Plaintiff's chance of infection by the deadly COVID-19 virus."  Pl.'s Opp. at 18.  However, this is a newly raised theory not previously pled. *See* Am. Compl. ¶¶ 77-80, 111-15.  "Generally, courts will not consider, on a motion for summary judgment, allegations that were not pled in the complaint and raised for the first time in opposition to a motion for summary judgment."  *Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009), *aff'd*, 358 F. App'x 229 (2d Cir. 2009).

Accordingly, Plaintiff's deliberate indifference claims are dismissed.

### E.  Infliction of Emotional Distress

Plaintiff alleges Defendants intentionally and negligently inflicted emotional distress upon him during his arrest and detention.  Am. Compl. ¶¶ 96-110.

A claim for IIED under New York law requires showing (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019).  In New York, claims for intentional infliction of emotional distress are "extremely disfavored," and "[o]nly the most egregious conduct has been found sufficiently extreme and outrageous to establish" such a claim. *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013).  "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).  However, the tort "may be invoked only as a last resort, to provide relief in those circumstances where

35

traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citations omitted). Therefore, "state courts and federal district courts in this Circuit 'have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory.'" *Caravalho v. City of New York*, 13-CV-4174 (PKC) (MHD), 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) (quoting *Brewton v. City of New York*, 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008)). "Courts in this Circuit have held the same for claims of NIED." *Id.*

Because the conduct at issue and any resulting damages are entirely encompassed by Plaintiff's claims for false arrest and excessive force, Plaintiff's IIED and NIED claims are dismissed. *See Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 214 (E.D.N.Y. 2014) (dismissing IIED and NIED claims as duplicative of malicious prosecution and assault claims).

### F. Municipal Liability

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be liable under § 1983 for the deprivation of a plaintiff's constitutional rights if the deprivation is caused by a governmental custom, policy, or usage of the municipality. *Id.* at 690. Acts by a non-policymaking municipal employee may "justify liability of the municipality if, for example, they were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citing *Amnesty Am.*, 361 F.3d at 125-26). "A plaintiff alleging that she has been injured by the actions of a low-level municipal employee can establish municipal liability

by showing that a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." *Id.*

One way for a plaintiff to establish a custom or policy is "by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Deliberate indifference, however, "is a stringent standard of fault," *Connick v. Thompson*, 563 U.S. 51, 70 (2011) (quoting *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)), "and necessarily depends on a careful assessment of the facts at issue in a particular case," *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011). "To prove such deliberate indifference, the plaintiff must show the need for more or better supervision to protect against constitutional violations was obvious." *Vann*, 72 F.3d at 1049. "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.* A plaintiff must also show that the deprivation of his or her constitutional rights was a "reasonably foreseeable consequence of, and [was] substantially caused by, the [municipality's] failure to supervise." *H.H. v. City of New York*, 11-CV-4905 (NG) (ST), 2017 WL 3396434, at *9 (E.D.N.Y. Aug. 7, 2017). Thus, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404 (explaining that mere negligence on the part of the municipality is not enough).

Plaintiff's complaint set forth alternative theories for municipal liability, Am. Compl. ¶¶ 53-80, but in opposition to summary judgment Plaintiff argues only that the City exhibited

deliberate indifference to Plaintiff's constitutional rights by failing to adequately discipline its officers. Pl.'s Opp. at 23-24. As discussed above, there are two components to municipal liability under a deliberate indifference theory: (1) the City was on notice of an obvious need to protect against constitutional violations and (2) the City failed to meaningfully respond to those violations.

Plaintiff submits an exhibit outlining a "Officer History" of CCRB complaints against Musa and Aponte.[15] Deliso Decl., Ex. 26, ECF 89-11; *see* Pl.'s Opp. at 24. Aponte was the subject of 8 total cases and 21 total charges of civilian complaints, including multiple for use of force and pointing a gun at a civilian. Deliso Decl., Ex. 26, ECF 89-11. At least two of those charges were substantiated and resulted in command disciplinary action. *Id.* Aponte admitted that he received one of those command disciplines after he punched a civilian, caused them to fall to the ground, and again punched the individual when they were on the ground. Aponte Dep. at 36:13-21. He claimed that these actions did not violate police procedure, and that it would be proper police procedure to punch a civilian in the face while effecting an arrest but may not be so while the individual is on the ground. *Id.* at 35:25-38:25.

Similarly, Musa was the subject of a total of 28 charges and 11 cases of complaints filed with the CCRB, most of which involved complaints of excessive use of force including restricting breathing. Deliso Decl. Ex. 26, ECF 89-11. Musa testified that he was a defendant in 1-2 other lawsuits alleging excessive force. Musa Dep. at 17:6-19:7.

Bobo's Officer History report shows that he was the subject of total of 88 charges and 32 total cases before the CCRB, including use of physical force, threat of force, and pointing a gun at

---

[15] For each officer the history contains a chart containing the CCRB report number, incident and reporting date, allegation, allegation disposition, board discipline recommendation, NYPD allegation disposition and NYP MOS Penalty. The allegations do not detail any specifics beyond categorial designations such as "Force – Physical Force," "Abuse – Threat of force (verbal or physical)," and the like. For the majority of the entries, the "Board Discipline Recommendation," "NYPD Allegation Disposition" and "NYPD MOS Penalty" columns are blank.

a civilian.  Deliso Decl. Ex. 24, ECF 89-10.  One of these incidents was reported just 15 days before the incident in this case and was substantiated, which resulted in "Command Discipline B." *See id.* at 4.  Bobo also testified that he appeared before the CCRB 15 times, Bobo Dep. at 15:4-9, for allegations including excessive use of force, but that he was exonerated from any complaint about use of force, *id.* at 19:2-18.  Further, Bobo admitted to being an individual defendant in three excessive use of force lawsuits, in addition to this suit.  *Id.* at 53:24-55:18.  Plaintiff has also submitted evidence that Bobo was the subject of Internal Affairs Bureau ("IAB") monitoring and was "placed in Level-I force monitoring due to the receipt of three civilian complaints in one (1) year," in 2012-2013, and was "monitored by the personnel bureau."  Deliso Decl., Ex. 15, ECF 89-2.[16]

Thus, Bobo, Aponte, and Musa each have received numerous civilian complaints making similar allegations to Plaintiff: that the officers used excessive force.  *See Alwan v. City of New York*, 311 F. Supp. 3d 570, 583-84 (E.D.N.Y. 2018) (noting it is "safe to say" that officer's history of eight CCRB complaints, two IAB complaints, and two lawsuits alleging excessive force were sufficient to create issue of fact as to City's notice).  At least one of those past complaints involved facts strikingly similar to those alleged here: Aponte admitted to previously forcing a civilian down and punching him while on the ground.

For the purposes of this motion, the Court assumes without deciding that this history of complaints creates a triable issue of fact as to an obvious risk of constitutional violations.[17]  *See*

---

[16] Plaintiff cites the same document for the proposition that Bobo was raised to a higher level of force monitoring based on his record—but the exhibit does not support that conclusion.  *See* Pl.'s Opp. at 23-24.

[17] That each, or even the majority, of the past complaints were not "substantiated" is not enough to defeat Plaintiff's claim that the City was on notice.  *See* Defs.' Reply at 10.  Although unsubstantiated complaints may not alone "provide a valid basis for concluding that the City was deliberately indifferent," *Alwan*, 311 F. Supp. 3d at 584, they "may form the basis of a deliberate indifference claim where there is evidence to suggest that the investigation into the allegations was inadequate."  *H.H.*, 2017 WL 3396434, at *8-9 (evidence that investigations were inadequate included that investigator was not provided with the adequate resources, and leads and recommendations for additional

*Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 520-21 (E.D.N.Y. 2017) (collecting cases) ("Courts in the Second Circuit routinely hold that multiple civilian complaints against an officer regarding conduct similar to that exhibited toward a plaintiff is enough for a jury to find the requisite degree of indifference to support failure to supervise liability under *Monell*.").

Assuming arguendo that the complaints create a triable issue of fact as to the obvious risk of constitutional violations, the Court turns to the issue of whether there is evidence to allow a rational jury to conclude that the City failed to adequately investigate or discipline the officers, such that it was deliberately indifferent.  Evidence of inadequate investigations and discipline may include the failure to notify supervisors of the filing of new civilian complaints, restoring a problem officer to full duty despite notice that problems were likely to recur, *see Vann*, 72 F.3d at 1050, failure to subject officers to meaningful questioning or "rigorous cross examination," *see Sango v. City of New York*, 83-CV-5177, 1989 WL 86995, at *2-3 (E.D.N.Y July 25, 1989), complaints being "simply reviewed at the command level rather than through Internal Affairs, and no disciplinary action is taken in response to most complaints," imposing no or "relatively lenient penalties," *Coggins*, 254 F. Supp. 3d at 521, investigations refusing to credit civilian testimony and reaching conclusions that "defy common sense," the failure "consider officer's complaint history to identify patterns," *Jenkins v. City of New York*, 388 F. Supp. 3d 179, 189-90, (E.D.N.Y. 2019), and the like.

---

investigation were ignored); *see also*, *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("city's efforts to evaluate . . . claims [are] so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims."); *Vann*, 72 F.3d at 1050 (finding that a reasonable juror could conclude that the City's handling of complaints "bespeak indifference" even though they were unsubstantiated because there was evidence that they could be true); *Jenkins*, 388 F. Supp. 3d at 192 (holding reasonable juror could conclude the City "chose to disregard a problem officer and invite his continued abuse" and finding the City's position that "unsubstantiated means exonerated and that the number of complaints, no matter how many, has no probative force," "despite evidence of a demonstrably flawed system that is supported by plainly inadequate investigations that are in most instances effectively stymied by an officer's simple denials.").

Plaintiff generally submits that "None of the officers were disciplined in any meaningful way or limited in their interactions with civilians. Remarkably, Defendants Bobo and Musa were promoted within the NYPD." Pl.'s Opp. at 24. Beyond the CCRB Officer History reports which summarily note officers' discipline, or lack thereof, *see* Deliso Decl. Exs. 15, 16, 25, 26, Plaintiff has submitted no evidence detailing the process, content, or result of investigations into prior complaints, nor the extent to which officers were disciplined. In response to questioning by the Court at oral argument, Plaintiff's counsel indicated Plaintiff does not have further details regarding prior CCRB complaints and investigations. *See* OA Tr. at 65:1-66:20.

This absence of evidence, specifically regarding the adequacy of past investigations and discipline, is insufficient to allow a reasonable jury to conclude that the City acted with deliberate indifference "rather than mere negligence of bureaucratic inaction." *Amnesty Am.*, 361 F.3d at 128; *see Reyes v. City of New York*, 992 F. Supp. 2d 290, 299 (S.D.N.Y. 2014) (reasonable jury could not infer deliberate indifference where plaintiff failed to "demonstrate that complaints were followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents"); *see also Alwan*, 311 F. Supp. 3d at 584 (despite sufficient evidence of an obvious risk, plaintiff failed to present sufficient evidence to support a rational conclusion that NYPD force-monitoring system reflected a policy of deliberate indifference). Accordingly, Defendants' motion for summary judgment is granted as to municipal liability.

## CONCLUSION

For the reasons stated, Defendants' motion for summary judgment is granted in part and denied in part.

The Court grants the Defendants' summary judgment as to Plaintiff's claims for deliberate indifference, intentional infliction of emotional distress, and negligent infliction of emotional

distress, municipal liability, and all claims against Defendants Chekalin, Fernandez, and John Doe 1-4.  Defendants' motion is also granted as to Plaintiff's failure to intervene claim against Defendant Bobo.  Accordingly, Defendants Chekalin, Fernandez, John Doe 1-4, and the City of New York are dismissed from this action.

Defendants' motion is denied as to Plaintiff's false arrest claims against Defendants Bobo, Musa, Aponte, and St. Fort; excessive force claims against Defendants Musa and Aponte; and failure to intervene against Defendants Musa, Aponte, and St. Fort.  Accordingly, Plaintiff's false arrest claims against Defendants Bobo, Musa, Aponte, and St. Fort; excessive force claims against Defendants Bobo, Musa, and Aponte; and failure to intervene claim against Defendants Musa Aponte, and St. Fort, shall proceed to trial scheduled to begin on January 12, 2026, at 9:00 a.m.


SO ORDERED.

                                                                    /s/_____
                                                                    ORELIA E. MERCHANT
                                                                    United States District Judge

Dated: June 10, 2025
           Brooklyn, New York